```
              UNITED STATES DISTRICT COURT
           SOUTHERN DISTRICT OF WEST VIRGINIA
                      AT CHARLESTON
```

DESIREE ANNA MARIE TAYLOR,

       Debtor,


GREEN TREE SERVICING, LLC,

       Appellant,

v.                                    Civil Action No. 2:06-0086
                                      Civil Action No. 2:06-0156
                                      Bankruptcy No. 03-21982
DESIREE ANNA MARIE TAYLOR,

       Appellee,

and


DESIREE ANNA MARIE TAYLOR,

       Appellant,

v.


GREEN TREE SERVICING, LLC,

       Appellee.


### MEMORANDUM OPINION AND ORDER

      Green Tree Servicing, LLC ("Green Tree") and Desiree

Anna Marie Taylor ("Taylor") filed cross-appeals of the September

13, 2005 order of the bankruptcy court.[1]

In that order, the bankruptcy court found that Green Tree violated the automatic stay by entering Taylor's residence on two separate occasions.  (Bankr. Ct. Order at ¶ 6).  It further found that those violations "give rise to damages under 11 U.S.C. § 362(h)."  (Id.).  Section § 362(h), recently recodified as § 362(k),[2] prescribes as follows:

> An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

Inasmuch as the bankruptcy court must necessarily have concluded that the violations were willful in order to merit an award of damages, the court construes the finding as one of willful violations.  The bankruptcy court awarded compensatory damages of $2,000.00 for the first violation and $3,000.00 for the second violation, along with reasonable attorney's fees and costs.  (Id.

---

[1]  Counsel for both parties have filed a single set of briefs, all in Green Tree Servicing, LLC v. Taylor, 2:06-cv-0086.  Inasmuch as the briefs are plainly intended by the parties to cover as well Taylor v. Green Tree Servicing, LLC, 2:06-0156, the court, accordingly, ORDERS that the appeals be, and they hereby are, consolidated for all purposes.


[2]  The recodification occurred as a result of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), enacted on April 20, 2005.

at ¶ 7).  No award of punitive damages was made or discussed by the bankruptcy court.

I.

According to the bankruptcy court order, the Circuit Court of Kanawha County awarded Green Tree a writ of possession to Taylor's mobile home on August 18, 2003.  (Id. at ¶ 2; Green Tree Br. at 3).  The writ of possession was not acted upon by the sheriff.  (Bankr. Ct. Order at ¶ 2).

On August 22, 2003, debtor Desiree Taylor filed Chapter 13 bankruptcy.  (Id. at ¶ 1).  Earlier that day on August 22, 2003, Taylor's lawyer faxed a letter to Brad Sorrells, counsel for Green Tree in the state proceeding that resulted in the writ of possession, advising that the bankruptcy petition would be filed later that same day.  (Id. at ¶ 4; 08-22-03 faxed letter, Ex. 13 at 9-7-04 hrg.).  This notice was the first attempt by the debtor to inform Green Tree of the bankruptcy filing.

On September 5, 2003, Green Tree dispatched an agent to the debtor's residence who, while Taylor was absent from the residence, forced his way into the home with a device used to disable door locks.  (Bankr. Ct. Order at ¶ 3).  The agent placed

3

a "for sale" sign in the window inside the residence and left a note on the outside of the front door notifying Taylor that she was obligated to vacate the premises.  (Id.).  Taylor suffers from psychogenic seizures, and upon returning to the residence and "seeing the 'for sale' sign and realizing her home had been entered," she had one of those attacks.[3]  (Id.).  Later that day on September 5, 2003, an employee of counsel for the debtor telephoned Mr. Sorrells, reminding him of the bankruptcy filing.  (Id. at ¶ 4).

On September 13, 2003, Green Tree's agent returned to the debtor's residence for a second time.  (Id. at ¶ 5).  This time the debtor was home.  (Id.).  The agent informed Taylor that if she failed to leave he would bring the sheriff to remove her.  (Id.).  The debtor handed the agent a business card of her bankruptcy attorney and told him of the bankruptcy filing.  (Id.).  The Green Tree agent left the premises.  (Id.).

The bankruptcy court found that damages be awarded for

---

[3] Another attempt to inform Green Tree about the bankruptcy filing occurred sometime after September 5, 2003, when an employee of counsel for the debtor telephoned Green Tree directly.  (Bankr. Ct. Order at ¶ 4).  The precise date of this phone call is uncertain.  (See id.).  The bankruptcy court order stated only that it occurred after September 5, 2003.  (Id.).  At the hearing, the parties' accounts differed as to the date of the call.  (09-07-04 Hrg. Tr. at 23, 33, 162, 170).

"the time and effort of the Debtor in defending her rights in court and for her actual damages of being placed in fear and subjected to emotional trauma."  (<u>Id.</u> at ¶ 7).  The court added that the "psychological evidence" indicated that Taylor suffered "genuine fear" and "real emotional injury" as a result of the two violations of the automatic stay.  (<u>Id.</u>).


II.


A.   The Standard of Review


        The court is vested with jurisdiction pursuant to 28 U.S.C. § 158.  The bankruptcy court's factual findings set forth above are entitled to deference and consequently are reviewed only for clear error.  Bankruptcy Rule 8013; <u>In re Ekenasi</u>, 325 F.3d 541, 544 (4th Cir. 2003).  Under the "clearly erroneous" standard, "findings of fact will be affirmed unless [the appellate court's] review of the entire record leaves [it] with the definite and firm conviction that a mistake has been committed."  <u>Harman v. Levin</u>, 772 F.2d 1150, 1153 (4th Cir. 1985).  Although the court is to apply the "clearly erroneous" standard of review for the bankruptcy court's findings of fact,

the bankruptcy court must have sufficiently delineated the evidentiary basis for its decision.  In re Excalibur Automobile Corp. v. Robinson, 859 F.2d 454, 458-59 (7th Cir. 1988); In re HSSI, Inc., 193 B.R. 851, 854 (N.D. Ill. 1996).  The bankruptcy court's conclusions of law are reviewed de novo.  In re Ekenasi, 325 F.3d at 544.


B.   11 U.S.C. § 362(k)


          This appeal implicates the application of 11 U.S.C. § 362(k).  "11 U.S.C. § 362 provides generally for the automatic stay of any and all proceedings against a debtor once a bankruptcy petition is filed."  Budget Service Co. v. Better Homes of Virginia, Inc., 804 F.2d 289, 292 (4th Cir. 1986) "Green Tree does not contest the fact that visits to the debtor's mobile home [violated the automatic stay and] were prohibited by [§] 362(a)."  (Green Tree Br. at 9).  Green Tree focuses on the language of § 362(k) and argues that it should not be held liable because the visits were "technical" rather than "willful" violations, and furthermore, Taylor did not prove she suffered "actual damages."  (Id. at 6-13).  In contrast, Taylor appealed arguing that the bankruptcy court erred in granting only $5,000.00 in emotional distress damages and in not granting

6

punitive damages.[4]  (Taylor Br. at 15-20; Taylor Desig. of Rec. and Statement of Issue on App. at 2-3).

The debtor, as the party seeking damages for willful stay violations, has the burden of proving by a preponderance of the evidence that a willful stay violation occurred, that damages were suffered, and that the amount of relief requested is appropriate. See Heghmann v. Indorf (In re Heghmann), 316 B.R. 395, 404-405 (1st Cir. BAP 2004); Ball v. A.O. Smith Corp., 321 B.R. 100, 110 (N.D. N.Y. 2005), aff'd, 451 F.3d 66 (2d Cir. 2006); In re McCarthy, 350 B.R. 820, 826 (Bankr. N.D. Ind. 2006); In re Clayton, 235 B.R. 801, 806-807 (Bankr. M.D. N.C. 1998).

1.  Whether the Violation was Willful

The relevant statute does not define "willful."  11 U.S.C. § 362(k).  Our court of appeals has explained its conception of "willful" in this context when, in the course of

---

[4]  In her notice of appeal, Taylor listed, as a basis for appeal the bankruptcy court's use of her preexisting condition as a "superseding factor" in determining the severity of the injury, but her brief does not mention it.  (Taylor's Desig. of Rec. and Statement of Issue on App. at 2-3; Taylor Br. at 1-20).  The court assumes Taylor has decided to forgo that argument, and the court does not address the issue.

7

finding a § 362(k) willful violation, it stated, "Budget Services knew of the pending petition and intentionally attempted to repossess the vehicles in spite of it." Budget Service Co., 804 F.2d at 293.  In short, an act is "willful" under § 362(k) if it is done intentionally and with knowledge of the bankruptcy filing.  See id.; In re McMullen, 386 F.3d 320, 330 (1st Cir. 2004); In re Atlantic Business and Community Corp., 901 F.2d 325, 329 (3d Cir. 1990); In re Bloom, 875 F.2d 224, 227 (9th Cir. 1989).

> Green Tree acknowledges that

> [t]o prove a willful violation of the stay, the Debtor does not have to demonstrate that the creditor had the specific intent to violate the stay.  In re Sharon, 200 B.R. 181, 200 (Bankr. S.D. Ohio 1996).  Showing that the Creditor knew of the bankruptcy case and that the creditor's actions were intentional is enough.  Id.

(Green Tree Br. at 10); see also Fleet Mortg. Group, Inc. v. Kaneb, 196 F.3d 265, 268-269 (1st Cir. 1999); In re Lansdale Family Restaurants, Inc., 977 F.2d 826, 829 (3d Cir. 1992); In re Atlantic Business and Community Corp., 901 F.2d at 329; In re Bloom, 875 F.2d at 227.  Moreover, whether the party believes in good faith that it had a right to the property is not relevant to whether the act was willful or whether compensation must be awarded.  Lansdale Family Restaurants, Inc., 977 F.2d at 829;

<u>Atlantic Business and Community Corp.</u>, 901 F.2d at 329; <u>Bloom</u>, 875 F.2d at 227.

        In asserting that its actions were not "willful," Green Tree contends that it neither received formal notice or received actual notice of the bankruptcy filing prior to the agent's visits to Taylor's residence.  However, notice of the bankruptcy filing need not be formal or official to put the creditor on notice.  <u>Haile v. New York State Higher Educ. Servs. Corp.</u>, 90 B.R. 51, 55 (W.D. N.Y. 1988); <u>Mercer v. D.E.F., Inc.</u>, 48 B.R. 562, 564-565 (D. Minn. 1985); <u>In re Perviz</u>, 302 B.R. 357, 367-368 (Bankr. N.D. Ohio 2003); <u>In re Flack</u>, 239 B.R. 155, 163-164 (Bankr. S.D. Ohio 1999); <u>In re Bragg</u>, 56 B.R. 46, 49 (Bankr. M.D. Ala. 1985).  The statute is silent on what notice is required, but in finding "willful" conduct sufficient for § 362(k) violations, courts have routinely found that knowledge can be imputed to the creditor through informal means, even by a mere telephone call.  11 U.S.C. § 362; <u>see</u> <u>e.g.</u> <u>In re Flack</u>, 239 B.R. 155, 163 (Bankr. S.D. Ohio 1999) (internal citation omitted) (noting that, "knowledge does not have to come through formal means, and even if not scheduled, a willful violation may be established where the creditor has sufficient facts to cause, ' . . . a reasonably prudent person to make further inquiry.'"); <u>In</u>

9

re Clayton, 235 B.R. 801, 808 (Bankr. M.D. N.C. 1998) (concluding "knowledge of the existence of an active bankruptcy case need not be communicated through formal notification of the filing of a petition"); Bragg, 56 B.R. 46, 49 (Bankr. M.D. Ala. 1985) (stating "the rule in this jurisdiction [is] that notice of the filing of a petition need not be a formal notice of the commencement of a case where the creditor has sufficient facts which would cause a reasonably prudent person to make further inquiry").

Any suggestion by Green Tree that their actions were not "willful" because their attorney, rather than Green Tree itself, received the original notice by facsimile on August 22, 2003, and again on September 5, 2003, is unavailing.  See Bryan v. Land (In re Land), 215 B.R. 398, 404 (8th Cir. BAP 1997) (motion to change venue filed by creditor was untimely in part because notice to creditor's attorney of the bankruptcy filing "may be imputed as a matter of law" to creditor); In re Robinson, 228 B.R. 75, 82, n. 7 (Bankr. E.D. N.Y. 1998) (internal citation omitted) (suggesting knowledge from attorney to creditor client may be imputed in determining willful violation of the automatic stay); Haile v. New York State Higher Educ. Servs. Corp., 90 B.R. 51, 55 (W.D. N.Y. 1988) (holding creditor willfully violated

automatic stay based upon the knowledge of its attorney and collection agency).

The pre-petition nature of the August 22, 2003 facsimile is a bit more involved.  The bankrupcty court found that "notice was effective as to Green Tree on August 22, 2003, when it was faxed to Mr. Sorrells, who acknowledges receipt." (Bankr. Ct. Order at ¶ 4).  Green Tree contends that because the facsimile, dated August 22, 2003, occurred prior to the filing of the bankruptcy petition later that same day, it cannot provide an adequate basis for establishing Green Tree's knowledge of the filing.  (Green Tree Br. at 6-7).  A series of cases have found, however, that pre-filing contact may be considered in determining whether a creditor's knowledge of the bankruptcy filing was sufficient to establish "willful" actions for § 362(k) purposes. See e.g. In re Clayton, 235 B.R. 801, 807-808 (Bankr. M.D. N.C. 1998); In re Constantino, 80 B.R. 865, 868 (Bankr. N.D. Ohio 1987); In re Bragg, 56 B.R. 46, 49 (Bankr. M.D. Ala. 1985).  In terms of pre-filing contact, one bankruptcy court has observed:

> [w]here a creditor is in possession of such facts, willful blindness may be deemed to be the equivalent of notice.  Constantino, 80 B.R. at 868.  It is therefore incumbent upon the creditor to verify the status of a case prior to commencing an action in violation of the automatic stay when facts indicate that the existence of a case may be likely.  Id.

11

Clayton, 235 B.R. at 808.  See also In re Flack, 239 B.R. 155,
163-64 (Bankr. S.D. Ohio 1999).

Because the August 22, 2003 letter faxed to the
creditor's counsel quite accurately informed that the bankruptcy
petition would be filed later that day, it was sufficient to
cause a reasonable person to at least inquire about the status of
the bankruptcy prior to the unwarranted self-help invasion of the
debtor's residence two weeks later.  Moreover, the creditor's
counsel intimately involved in obtaining the writ of possession
in state court also served as the creditor's counsel in the
Taylor bankruptcy proceeding.  Inasmuch as the knowledge of the
creditor's counsel may in this instance be imputed to the
creditor, the bankruptcy court did not err in finding that Taylor
established that Green Tree willfully, rather than merely
technically, violated the stay after the bankruptcy filing on
August 22, 2003.

2.  Actual Damages

The bankruptcy court awarded damages for the time and

12

effort that defendant spent defending her rights in court and for her actual damages of being placed in genuine fear and suffering real emotional injury as a result of the violations of the automatic stay.  (Bankr. Ct. Order at ¶ 7).

Evidence supporting the finding of damages included the unwarranted invasion of the debtor's residence on Friday, September 5, 2003, by a representative of Green Tree who disabled the front door lock in order to gain entry and then walked through the interior of a home that was obviously occupied, though no one was then present, and placed a "for sale" sign in the window.  (Id. at ¶ 3; 09-07-04 Hrg. Tr. at 72, 83).  Upon the debtor's return to her home she became immediately aware of the unlawful entry and, as an apparent result, suffered a psychogenic seizure to which she is prone in stressful situations.  (Bankr. Ct. Order at ¶ 3; 09-07-04 Hrg. Tr. at 111).  She required the attention of her health care giver on the ensuing weekend because of the fear and emotional trauma she experienced. (09-07-04 Hrg. Tr. at 52).

The return of the repossessor, who was dispatched by Green Tree a second time on September 13, 2003, rekindled fear and emotional trauma in the debtor when he remained at the

residence for an estimated 10 to 12 minutes though he was given the business card of the debtor's bankruptcy attorney and advised of the bankruptcy filing.  (Bankr. Ct. Order at ¶ 5; 09-07-04 Hrg. Tr. at 44-46, 61, 77, 181).  The demeanor of the representative was characterized as rude and he warned the debtor, "I'll be back with the sheriff in two hours."  (Bankr. Ct. Order at ¶ 5; 09-07-04 Hrg. Tr. at 45-46).  He left the premises and did not return. (Bankr. Ct. Order at ¶ 5; 09-07-04 Hrg. Tr. at 64).

The bankruptcy judge awarded damages of $2,000 for the first violation and $3,000 for the second, together with reasonable attorneys fees and costs.  (Bankr. Ct. Order at ¶ 7).  Green Tree appeals the award, contending that actual damages were not shown.  The debtor appeals the award, contending it to be insufficient.

Damages for emotional distress are recoverable for § 362(k) violations.  In re Dawson, 390 F.3d 1139, 1146-48 (9th Cir. 2004); Aiello v. Providian Financial Corp., 239 F.3d 876, 880 (7th Cir. 2001); Fleet Mortg. Group, Inc. v. Kaneb, 196 F.3d 265, 269-70 (1st Cir. 1999).  While claims for fleeting or trivial emotional distress are not compensable, an individual who

14

suffers significant harm and demonstrates a causal connection between the harm and the violation of the automatic stay is entitled to be compensated.  <u>Dawson</u>, 390 F.3d at 1149; <u>Aiello</u>, 239 F.3d at 880; <u>Kaneb</u>, 196 F.3d at 270.

      The harm in this case was sufficiently significant and causally connected to the violations that an award is warranted. Although the amount of an award for emotional distress is not one that can be measured with precision, the court finds that actual damages of $2,000 for the first violation and $3,000 for the second are in keeping with the evidence and constitute a reasonable monetary award that is adequate but not more than necessary to fairly compensate the debtor for the harm suffered. In arriving at those amounts the bankruptcy judge properly took into account the debtor's pre-existing condition that made her disposed to psychogenic seizures and the temporary nature of the trauma induced by Green Tree's actions.  The court concludes that the bankruptcy court's findings were not clearly erroneous and that the compensatory damages award of $5,000 is appropriate.

### 3.  Punitive Damages

Taylor's appeal takes exception to the failure of the bankruptcy court to impose punitive damages.  (Taylor Br. at 16-20).  The relevant statute provides for punitive damages "in appropriate circumstances."  11 U.S.C. § 362(k).  There is a lack of uniform guidance on what is meant by "appropriate circumstances."  Several standards have been adopted by the various courts that have considered the question.  (Taylor Br. at 17-19).

One group uses "maliciousness or bad faith" as the guide.  See Crysen/Montenay Energy Co. v. Esselen Associates, 902 F.2d 1104, 1105 (2d Cir. 1990); Atlantic Business and Community Corp., 901 F.2d 325, 329 (3d Cir. 1990); In re Rutherford, 329 B.R. 886, 898 (Bankr. N.D. Ga. 2005); In re Calvin, 329 B.R. 589, 604 (Bankr. S.D. Tex. 2005); In re Harris, 310 B.R. 395, 400 (Bankr. E.D. Wis. 2004); In re Bivens, 324 B.R. 39, 42 (Bankr. N.D. Ohio 2004).  Another group of cases uses "arrogant defiance of federal law" as the touchstone.  See In re Curtis, 322 B.R. 470, 486 (Bankr. D. Mass. 2005); In re Bishop, 296 B.R. 890, 898 (Bankr. S.D. Ga. 2003); In the Matter of Mullarkey, 81 B.R. 280, 284 (Bankr. D. N.J. 1988).

16

Other courts have used egregious, vindictive or
intentional misconduct as the standard.  <u>Lovett v. Honeywell</u>, 930
F.2d 625, 628 (8th Cir. 1991); <u>In re McHenry</u>, 179 B.R. 165, 168
(9th Cir. BAP 1995); <u>Davis v. IRS</u>, 136 B.R. 414, 423, n. 20 (E.D.
Va. 1992); <u>In re Hampton</u>, 319 B.R. 163, 174 (Bankr. E.D. Ark.
2005);  <u>In re Cullen</u>, 329 B.R. 52, 57-58 (Bankr. N.D. Iowa 2005);
<u>In re Jackson</u>, 309 B.R. 33, 40 (Bankr. W.D. Mo. 2004); <u>In re
Bivens</u>, 324 B.R. 39, 42 (Bankr. N.D. Ohio 2004); <u>In re Smith</u>, 296
B.R. 46, 56 (Bankr. M.D. Ala. 2003); <u>In re Hedetneimi</u>, 297 B.R.
837, 843 (Bankr. M.D. Fla. 2003); <u>In re Siharath</u>, 285 B.R. 299,
305 (Bankr. D. Minn. 2002); <u>In re Briggs</u>, 143 B.R. 438, 464
(Bankr. E.D. Mich. 1992).  Still other courts have used a multi-
factor approach and considered the following four factors: (1)
the nature of the defendant's conduct; (2) the defendant's
ability to pay; (3) the motives of the defendant; and (4) any
provocation by the debtor.  <u>Heighmann v. Indorf</u> (<u>In re Heghmann</u>),
316 B.R. 395, 405 (1st Cir. BAP 2004) (citing <u>In re Sumpter</u>, 171
B.R. at 845; <u>In re B. Cohen & Sons Caterers, Inc.</u>, 108 B.R. 482,
487-88 (E.D. Pa. 1989)).

One point that seems clear from the different standards
articulated is that "punitive damages usually require more than

17

mere willful violation of the automatic stay." <u>Heghmann</u>, 316
B.R. at 405.  It is elsewhere suggested that "the Bankruptcy Code
does not attempt to delineate what "appropriate circumstances"
means, leaving it to the sound discretion of the bankruptcy
court." <u>Id.</u>; <u>In re Smith</u>, 296 B.R. 46, 56 (Bankr. M.D. Ala.
2003).

        Using any of the standards referenced above, the court
finds that the bankruptcy court appropriately declined to award
punitive damages to Taylor.  Green Tree ceased all collection
efforts related to Ms. Taylor following September 13, 2003,
suggesting that indifference and poor communication between Green
Tree's counsel and the various levels of the organization
probably led to the stay violations, rather than the type of
reckless disregard, arrogant defiance, bad faith, or malicious,
egregious, or vindictive conduct generally required for a
punitive damages award.  The debtor has failed to establish an
adequate evidentiary basis for the recovery of punitive damages
in this case.

III.


Based upon the foregoing, it is ORDERED that the decision of the bankruptcy court, dated September 13, 2005, be, and it hereby is, affirmed.


The Clerk is directed to forward copies of this written opinion and order to all counsel of record and the United States Bankruptcy Judge.


DATED: March 30, 2007


John T. Copenhaver, Jr.
United States District Judge